IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PERFORMING ARTS COMMUNITY IMPROVEMENT DISTRICT, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 13-0945-CV-W-ODS ) |
| ACE AMERICAN INSURANCE CO., | ) ) |
| Defendant. | ) |

<u>ORDER AND OPINION (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pending are motions (1) from Plaintiff, seeking partial summary judgment and (2) from Defendant, seeking summary judgment. Based on the undisputed facts, the Court (1) denies Plaintiff's motion (Doc. # 70) and (2) grants Defendant's motion (Doc. # 78).

I. BACKGROUND

Plaintiff is a statutory entity, created by Missouri law to provide financing for community improvement projects. As an agent for the City of Kansas City, Missouri, Plaintiff oversaw the design and construction of a parking garage adjacent to the Kauffman Center for the Performing Arts. To that end, in February 2008, Plaintiff retained Moody-Nolan, Inc. ("MNI") to provide architectural and design services and Carl Walker, Inc. ("Walker") to provide structural design services. In October 2009, Plaintiff retained Walton Construction Company – a CORE Company, LLC ("Walton") to serve as the general contractor. Plaintiff's contract with Walton required Walton to obtain a Builder's Risk Policy and to have Plaintiff listed as an additional insured on the policy. Walton fulfilled this obligation by obtaining a Builder's Risk Policy from Defendant Ace American Insurance Company.

The project included installation of a fifty foot high concrete retaining wall between the garage and a limestone rock face to the north of the garage. This effort included placement of flowable concrete fill in the area between the retaining wall and the limestone embankment. MNI and Walker collectively provided both the design for the retaining wall and the specifications for the back-fill. As originally formulated, the specifications called for "no more than 18 inches of fluid fill . . . against the wall." However, Walton requested approval for an alternate mix for the fill, and Walker approved an increase in the amount of fill, permitting up to thirty-six inches of fill between the wall and the embankment.

Construction of the wall commenced sometime in September 2010. During installation of the fill, the wall cracked and "deflected and bulged suddenly and thereby required investigation, repair and replacement." Amended Complaint, ¶ 12.[1] Plaintiff retained the services of a structural engineer (James Hauck) to determine why the wall failed. Hauck determined that the wall collapsed because Walker's design permitted too much fill between the wall and the embankment. Hauck explained at his deposition that the wall "was deflected out about 8 inches from the vertical, which was not an intended design condition" and his "structural analysis . . . showed that the wall failed under those loads. The stresses exceeded the allowable values of the materials . . . ." Hauck Dep. at 30. In his written report, Hauck opined "that the retaining wall suddenly failed due to the cumulative moment in the wall exceeding the cracking capacity of the wall during the" backfilling. Whether the pressure behind the wall was caused by (1) excess fill in the now-enlarged space or (2) water accumulating in the now-enlarged space is matter of no consequence; clearly, it was pressure caused by the accumulation of one, the other, or both that caused the wall to fail, and the accumulation could occur only because there was sufficient space behind the wall to permit the accumulation. Hauck

---

[1]Plaintiff disputes whether the cracking occurred before, during or after the wall's failure, but (1) cites no evidence in the Record from a witness to the events that addresses the issue one way or the other and (2) more importantly, fails to explain why the sequence matters. To the extent Plaintiff relies on the testimony of Anthony Clark, the Court notes Clark was not present at the construction site (and thus has no personal knowledge) and is not an engineer or otherwise qualified to give an expert opinion as to what happened.

2

concluded the wall failed because of Walker's approval of the change in the plans, and that this change was inappropriate and should not have been approved:

> [T]he increased fill lift height approved by Carl Walker caused the maximum moment in the failed retaining wall to exceed the cracking moment of the wall during backfilling operations. Had Carl Walker evaluated the wall deflections using the procedures outlined in ACI 318, Section 9.5.2.3 using the specified 28-day compressive strength of the concrete, they would have discovered that the original design load would have caused the wall to crack.
>
> * * *
>
> It is our professional opinion that the retaining wall at the Art's District Garage failed as the direct result of Carl Walker's failure to consider the effects of calculated wall deflection on the specified backfilling sequence. At the time of the failure, the cumulative moment in the wall exceeded the cracking capacity of the wall causing an abrupt decrease in wall stiffness and a corresponding increase in wall deflection. This increased deflection allowed the liquid flowable fill to get between the previously placed fill and the back face of the wall, thereby causing it to fail.

Plaintiff concedes Walker's approval of a change to thirty-six inches of fill constituted a design error, but insists the defective design was not the direct cause of the wall's failure and instead insists the pressure build-up caused the failure.

The Builder's Risk policy states that, subject to the exclusions contained therein, it "insures against risks of direct physical loss or damage to property of every kind and description intended to become a permanent part" of the project, and there is no question that the retaining wall qualifies as such property. The policy's exclusions are set forth in Part D, where thirty-one exclusions appear. The last five exclusions appear below the following provision (which is in all-caps in the policy): "This policy does not insure loss or damage caused by any of the following, unless direct physical loss or damage by an insured cause of loss ensues and then this policy insures only such ensuing direct physical loss or damage." One of the exclusions appearing below this provision excludes coverage for "[e]rror, omission or deficiency in design, plans, specifications, engineering or surveying." In August 2013 Plaintiff requested coverage for the wall's failure, and Defendant denied coverage in November 2013. Defendant's

3

denial indicated there had been no change in the facts since it last considered and rejected a claim for the wall's failure, which occurred when Walton previously submitted a similar claim. In that denial, Defendant advised Walton that coverage was being denied because the Walton's defective design allowed pressure to build up, either because of excessive fill or because of excessive water build-up; either way, Defendant viewed the wall's failure to be caused by the defective design and that no insurable cause occurred thereafter.

Plaintiff filed this suit, and in its Amended Complaint asserts claims for breach of contract (Count I) and vexatious refusal to pay (Count II). Plaintiff seeks partial summary judgment on the issue of liability on Count I, while Defendant seeks summary judgment on both counts.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

4

"Insurance policies are contracts," and "[t]he rules of contract construction govern insurance policies." Blair v. Perry County Mut. Ins. Co., 118 S.W.3d 605, 606 (Mo. 2003) (en banc). The language employed in the contract/policy is to be given its plain and ordinary meaning, and if that meaning is unambiguous there is no need to apply rules of construction. E.g., Allen v. Continental Western Ins. Co., 436 S.W.3d 548, 553-54 (Mo. 2014) (en banc); Rice v. Shelter Mut. Ins. Co., 301 S.W.3d 43, 47 (Mo. 2009) (en banc).

As stated earlier, the policy "insures against risks of direct physical loss or damage to property of every kind and description intended to become a permanent part" of the project, and there is no question that the retaining wall qualifies as such property. Defendant bears the burden of demonstrating an exclusion applies, e.g., Powell v. State Farm Mut. Auto. Ins. Co., 173 S.W.3d 685 (Mo. Ct. App. 2005), and here Defendant contends Exclusion T applies because the wall's failure was "caused by . . . Error, omission or deficiency in design, plans, specifications, engineering or surveying." Plaintiff contends Exclusion T does not apply because the wall's failure was "direct physical loss or damage by an insured cause of loss" that "ensue[d]" after the deficient plans. Plaintiff bears the burden of demonstrating that the exception to exclusion applies. E.g., Trans World Airlines v. Associated Aviation Underwriters, 58 S.W.3d 609, 621-22 (Mo. Ct. App. 2001). Regardless of these burdens, the undisputed facts demonstrate that the wall's failure was caused by an error, omission or deficiency in design and was not caused by an ensuing cause of loss that was insured.

There is no serious doubt that the defective design was a but-for causation of the wall's collapse because it allowed more pressure (either due to water or fill) than the wall could withstand. The exception Plaintiff invokes comes into play only if "loss or damage by an insured cause of loss ensues." Plaintiff argues the ensuing cause of loss was the excessive pressure caused by the water or fill. In this way, Plaintiff seeks to divorce the defective design from the losses it caused, or more precisely to separate the defective design from the losses incurred because the defective design was actually utilized. In this way, Plaintiff effectively argues the only "loss" excluded by virtue of the defective design is the cost of obtaining non-defective designs. The Court holds Plaintiff's argument is not legally viable.

5

The ensuing loss provision is a commonly used and understood provision, and generally applies when an event that is excluded from coverage causes a subsequent event that *is* covered. The parties cite to the same historical example for illustrative purposes, arising from the 1906 San Francisco earthquake. Property insurance policies did not cover earthquake damage, but did cover fire damage. The earthquake caused gas fires to break out – therefore, (1) damage caused directly by the earthquake was excluded from coverage, but (2) the fires were an ensuing and distinct cause of covered loss, so the policies covered the fire damage – even though the earthquake was a but-for cause of the fires. KAAPA Ethanol, LLC v. Affiliated FM Ins. Co., 660 F.3d 299, 304 n.3 (8th Cir. 2011). The critical point highlighted by this example is that an ensuing loss is one that occurs *subsequent* to the excluded loss. Plaintiff categorizes the wall's physical failure as an "ensuing loss" by characterizing the provision of defective plans as an event distinct from the use of those plans to create a wall that was defective. The problem is that there is only one event and only one loss, so there is nothing "ensuing" and the exception to coverage does not apply.

An ensuing loss must be distinct and subsequent to the excluded loss. This is confirmed in a variety of ways. First, the clause itself indicates that there are two events: an event that is excluded from coverage, and a distinct event that causes an ensuing loss. Second, the example of the 1906 earthquake confirms the need for two distinct events: there, it was the earthquake (damages for which were excludable) and a subsequent event (there, fire) that was covered. Third, cases from a multitude of jurisdictions[2] establish the need for a distinct loss in order to prevent the ensuing loss exception from swallowing the exclusion to which it is appended. Many of these cases also establish that Plaintiff's attempt to separate the defective design from the losses caused by the defective design is unavailing, including:

---

[2]When determining the content of Missouri law, the Court must obey decisions of the Missouri Supreme Court. If there are no such decisions, the Court must ascertain what the Missouri Supreme Court would likely hold if presented with the issue, and in that endeavor that Court may consider relevant precedents from other jurisdictions. TNT Speed & Sport Center, Inc. v. American States Ins. Co., 114 F.3d 731, 733-34 (8th Cir. 1997).

6

Case 4:13-cv-00945-ODS   Document 89   Filed 06/03/15   Page 6 of 9

- TRAVCO Ins. Co. v. Ward, 715 F. Supp. 2d 699, 718-719 (E.D. Va. 2010) aff'd, 504 Fed. App'x 251 (4th Cir. 2013) – drywall defective because it emitted noxious gas; policy excluded coverage for defective materials, and damage to property from the gas was not an "ensuing loss" because the emission of gas constituted the defect in the material.
- Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 167-68 (Fla. 2003) – loss from repairing defectively designed building not caused by "ensuing loss" but rather caused by non-covered design defect.
- Vermont Elec. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co., 72 F. Supp. 2d 441, 445 (D. Vt. 1999) – policy excluded coverage for faulty or defective design; transformers were defectively designed, but cost of replacing damaged transfomers built pursuant to the defective design was not an "ensuing loss."
- Laquila Const., Inc. v. Travelers Indemnity Co. of Ill., 66 F. Supp. 2d 543, 545-46 (S.D.N.Y. 1999), aff'd, 216 F.3d 1072 (2d Cir. 2000) – sub-par concrete used in construction of fifth floor of a building; policy excluded coverage for costs associated with faulty workmanship or material, and costs associated with repairing the fifth floor did not constitute an "ensuing loss."
- Schloss v. Cincinnat Ins. Co., 54 F. Supp. 2d 1090, 1095 (M.D. Ala 1999), aff'd, 211 F.3d 131 (11th Cir. 2000) (Table) – policy excluded coverage for damage caused by rot; cost of remediating rot was part of that excluded damage and not an "ensuing loss" because the need to remediate was directly caused by the rot
- Allianz Ins. Co v. Impero, 654 F. Supp. 16, (E.D. Wash. 1986) – cost of repairing defective construction were caused by the construction and there was no "ensuing loss."
- Narob Dev. Corp. v. Insurance Co. of N. Am., 631 N.Y.S.2d 155, 155-56 (N.Y. App. Div. 1995) – "Where a property insurance policy contains an exclusion with an exception for ensuing loss, courts have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded risk."

7

The Eighth Circuit, applying Minnesota law, has also held that an ensuing loss provision excludes from coverage the normal results of the excluded event and applies to ensuing losses that are distinct and separable from the excluded event. Friedberg v. Chubb & Son, Inc., 691 F.3d 948, 953 (8th Cir. 2012).

Plaintiff relies heavily on the Missouri Court of Appeals decision in Drury v. Missouri United School Ins. Counsel, but the Court concludes that decision is distinguishable. That case involved installation of a roof deck; during the installation process "[r]ain and other precipitation, including ice storms, occurred over the next several months, and the [roof] suffered moisture damage." 455 S.W.3d 30, 33 (Mo. Ct. App. 2014). The applicable builder risk provision excluded coverage for faulty workmanship or materials unless "loss by a peril not otherwise excluded" ensued but specifically covered losses caused by rain, snow, sleet and other weather conditions. The insurer sought to avoid coverage by contending faulty workmanship left the roof exposed to the elements, but the Missouri Court of Appeals held that the damage caused by the weather constituted an ensuing loss because it was caused by an event separate and independent from the defective workmanship (that is, the weather) Id. at 37. While it may have been true that the faulty workmanship was a "but for" cause of the loss, the existence of a (1) subsequent event separate and apart from the faulty workmanship that was (2) covered by the policy triggered the ensuing loss provision.

This case presents no subsequent event. A defective wall was created (because it was built in accordance with defective plans), and the defective wall failed. There was no ensuing event that caused the wall to fail. Plaintiff's submits the build-up of lateral pressures was an ensuing event, but this is simply another way of saying the wall was defectively designed. If a defectively-designed building collapses, one does not characterize the effect of gravitational forces as a distinct and separate event, and the cost of replacing the collapsed building is not an ensuing loss. Similarly – as here – if a defectively designed retaining wall fails to retain the pressure it was intended to retain, one does not characterize the pressure as a distinct and separate event, and the resulting need to replace the defectively designed wall is not an ensuing loss.

The retaining wall was defectively designed. The retaining wall failed as a result of that defective design. Losses due to defective design are excluded from coverage.

8

The cost of replacing the wall was due to the defective design.  The need to replace the wall was not caused by a subsequent event, so there was no ensuing loss.

### III.  CONCLUSION

Plaintiff's Motion for Partial Summary Judgment is denied.  Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: June 3, 2015                       UNITED STATES DISTRICT COURT